**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ZACHARY W. WOODS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: |
| | ) | |
| TRIPLE CANOPY, INC.; | ) | |
| CONSTELLIS, LLC; | ) | |
| CONSTELLIS HOLDINGS, LLC; | ) | |
| CONSTELLIS, INC.; | ) | |
| CONSTELLIS GROUP, INC.; and | ) | |
| DYLAN BARRETT | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' NOTICE OF REMOVAL

TO THE CLERK OF THE DISTRICT COURT:

PLEASE TAKE NOTICE that Defendants Triple Canopy, Inc. ("Triple Canopy"), Constellis, LLC, Constellis Holdings, LLC, Constellis, Inc., and Constellis Group, Inc. ("Constellis Defendants") (collectively, "Defendants" or "Triple Canopy"), remove this action from the Circuit Court of Cook County, Illinois, to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. §§ 1331, 1441, 1442, 1367(a). In support of this Notice of Removal, Defendants state as follows:

### I.    INTRODUCTION

1.    Plaintiff Zachary W. Woods ("Plaintiff") filed this lawsuit in the Circuit Court of Cook County, Illinois, on June 26, 2018. The Complaint alleges, *inter alia*, that Triple Canopy and/or the Constellis Defendants acted negligently in carrying out their duties and obligations under their contract with the United States Department of Defense to provide security for facilities, military personnel, and civilians stationed at Bagram Airfield in Afghanistan (the "Bagram

Airfield Security Contract" or "Security Contract"). All process, pleadings, and orders served upon Defendants are attached hereto as **Exhibit A**, as required by 28 U.S.C. § 1446(a).

2. Plaintiff served Triple Canopy with the Complaint on July 12, 2018. Plaintiff served Constellis, LLC, Constellis Holdings, LLC, and Constellis, Inc. with the Complaint on July 24, 2018. This Notice of Removal is timely under 28 U.S.C. § 1446(b) and Fed. R. Civ. P. 6(a)(1)(C) because Defendants are filing it within 30 days of being served with the complaint.

3. Defendant Constellis Group, Inc. is no longer a legal entity. It is now Constellis, Inc. As such, Defendant Constellis Group, Inc. could not be, and was not, served with the Complaint in state court. Defendants anticipate that Plaintiff will dismiss Constellis Group, Inc. from this action. However, for present purposes, Constellis Group, Inc. joins and consents to this Notice of Removal.

4. Individual Defendant Barrett has not been served with the Complaint. Thus, the fact that he has not consented to this Notice of Removal is not a barrier to removal. *See P. P. Farmers' Elevator Co. v. Farmers Elevator Mut. Ins. Co.*, 395 F.2d 546, 547–48 (7th Cir. 1968) ("Under a recognized exception to the general rule [defendant] need not have joined in petitioning for removal if it had not been served with the state court summons.").

5. In addition, removal of this case is based on 28 U.S.C. § 1441 *and* 28 U.S.C. § 1442(a), the latter of which is a statutory exception to the requirement that all defendants consent to removing a case from state court. *O'Callaghan v. United States*, 686 F. Supp. 2d 826, 828 (N.D. Ill. 2010) ("[C]ourts have been clear in holding that a federal officer need not obtain the consent of other defendants to remove under Section 1442"); *Bottos v. Avakian*, 477 F. Supp. 610, 611, n.3 (N.D. Ind. 1979), *aff'd*, 723 F.2d 913 (7th Cir. 1983) ("Only the federal defendants petitioned for removal, but in cases of removal of suits against federal officers under [§] 1442(a)(1) the entire

case can be removed by the timely petition of a single federal defendant, regardless of whether other defendants, federal officers or not, properly join in the petition for removal.").

6. Defendants remove this case to the United States District Court for the Northern District, Eastern Division, which is the district and division embracing the place where the state court action was filed. 28 U.S.C. § 1441(a); *see also* 28 U.S.C. § 129(a).

7. Removal is proper under 28 U.S.C. § 1442(a)(1) where the removing defendant establishes that (1) the defendant is a "person" within the meaning of the statute; (2) the defendant was "acting under" a federal officer, thus creating a causal connection between the plaintiff's claims and defendant's actions under federal direction; and (3) the defendant has raised a colorable defense based on federal law. *See Jefferson County, Ala. v. Acker*, 527 U.S. 423, 431 (1999); *Mesa v. California*, 489 U.S. 121, 124–25, 129–31, 134–35 (1989); *Ruppel v. CBS Corp.*, 701 F.3d 1176, 118–81 (7th Cir. 2012); *Harris v. Rapid Am. Corp.*, 532 F. Supp. 2d 1001, 1003 (N.D. Ill. 2007). As explained below, Triple Canopy satisfies the requirements of Section 1442(a)(1) because it is a corporation acting in its official capacity under its contract with the United States, Plaintiff's suit derives solely from Triple Canopy's performance of its official duties under that contract, and Triple Canopy intends to raise numerous federal defenses, including federal preemption of state law under the combatant activities exception to the Federal Tort Claims Act, federal preemption of state law under the discretionary function exception to the Federal Tort Claims Act, the political question doctrine, and various doctrines of official and derivative sovereign immunity.

8. In addition, removal of this case is proper under 28 U.S.C. §§ 1331 and 1441 because Plaintiff's claims are completely preempted by federal law, and even if they are not completely preempted, adjudication of the claims will require this Court to resolve substantial

3

disputed questions of federal law. *See Grable v. Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).

9.      Any claims not removable under 28 U.S.C. §§ 1442(a)(1), 1331, and 1441 should be removed under this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because they arise under "the same nucleus of operative facts" as the removable claims.

## II.      NATURE OF THE CASE

10.      Plaintiff is an active duty officer in the United States Army.  *See* **Exhibit A**, Complaint ("Compl.") ¶ 1.  At the time of the events giving rise to this lawsuit, Plaintiff was stationed at Bagram Airfield in Afghanistan under active duty orders.  Compl. ¶ 2.

11.      Triple Canopy and the Constellis Defendants are related companies that provide, among other things, security services on United States military bases and installations throughout the world, including at Bagram Airfield in Afghanistan.  Compl. ¶¶ 11–12.  At the time of the events giving rise to this lawsuit, Triple Canopy employed Defendant Barrett.  Compl. ¶ 13.

12.      The Bagram Airfield Security Contract, under which Triple Canopy agreed to provide security for facilities, military personnel, and civilians stationed at Bagram Airfield in Afghanistan, is central and indispensable to Plaintiff's allegations and claims in the complaint. *See, e.g.*, Compl. ¶¶ 14–24; 27–70.

13.      Specifically, Plaintiff alleges that "as a result of the inadequate, inappropriate and improper training provided by [Triple Canopy]" pursuant to the Security Contract, "Defendant Barrett negligently, recklessly and/or carelessly fumbled his firearm causing it to discharge and Defendant Barrett shot the Plaintiff in the chest."  Compl. ¶ 24.  Plaintiff further alleges that Defendant Barrett "was acting within the course and scope of his employment and under the direction and/or control of [Triple Canopy]" when he shot Plaintiff.

14. Plaintiff proceeds on theories of Respondeat Superior (Counts I, III, V, VII, IX against Triple Canopy and each of the Constellis Defendants), Negligent Hiring/Retention (Counts II, IV, VI, VIII against Triple Canopy and each of the Constellis Defendants), and Negligence (Count XI against Defendant Barrett). The Court's adjudication of these claims will necessarily involve substantial disputed questions of federal law.[1]

### III.    PLAINTIFF'S PREVIOUS COMPLAINT

15. This Complaint is not the first complaint filed in connection with these allegations and claims. The first complaint asserting these claims was filed by Plaintiff in the Circuit Court of Cook County in December 2017 ("December 2017 complaint"). *See* **Exhibit C**. Before Triple Canopy could remove the December 2017 complaint to federal court, Plaintiff filed a Motion for Voluntary Dismissal, which the court granted. *See* **Exhibit D.**

16. The December 2017 complaint and this Complaint are based on the same set of factual allegations and assert the exact same claims.

17. The difference between the two complaints is that the December 2017 complaint repeatedly and correctly emphasized that Triple Canopy's hiring, training, and supervision of Defendant Barrett was done pursuant to the Bagram Airfield Security Contract. *See* **Exhibit C** ¶¶ 15, 18, 19, 20, 22, 23, 24, 25, 28.

---

[1] The claims asserted against Triple Canopy and the Constellis Defendants are premised on their alleged employer-employee relationship with Defendant Barrett. Because Triple Canopy was Defendant Barrett's sole employer, the Constellis Defendants have no connection to this action and are not proper parties. At the appropriate time, Defendants will move the Court to dismiss the Constellis Defendants pursuant to Federal Rule of Civil Procedure 21. For purposes of this Notice of Removal, Defendants focus on Plaintiff's claims against Triple Canopy because they are the gravamen of the Complaint. *See* Counts I-II. Moreover, the existence of a single removable claim allows removal of the entire action. *See* 28 U.S.C. § 1441(c); *Lepucki v. Van Wormer*, 765 F.2d 86, 89 (7th Cir. 1985). Nevertheless, Defendants note that the bases for removal apply with equal force to the claims asserted against the Constellis Defendants, which are identical to the claims asserted against Triple Canopy. *See* Counts III-IX. They also apply to the negligence claim asserted against Defendant Barrett. *See* Count X. In other words, all ten counts of this Complaint are removable under 28 U.S.C. §§ 1331, 1441, and 1442(a)(1).

18.     The December 2017 complaint alleges, for example, that "the Security Contract entered into by [Triple Canopy] required [Triple Canopy] to provide [its] employees, agents, servants and/or representatives, specifically including the Defendant Barrett, with complete, proper and adequate weapons and firearm training . . . ." **Exhibit C ¶ 18.**   It further alleges that Defendant Barrett shot Plaintiff after Defendant Barrett entered a designated area and did not clear his firearm as required by "U.S. Army policies, procedures, regulations and/or guidelines relating to the carriage, use, and safety of firearm[s]." *Id.*  ¶¶ 22, 28-29.

19.     In an apparent effort to prevent this action from being removed to federal court pursuant to 28 U.S.C. § 1442(a)(1), Plaintiff withdrew the December 2017 complaint and deleted all but one reference to the "Security Contract" and all references to "U.S. Army policies, procedures, regulations and/or guidelines relating to the carriage, use, and safety of firearm[s]" before refiling this Complaint.

20.     Plaintiff's effort to defeat removal is unavailing.  Although Plaintiff deleted many of the explicit references to the "Security Contract" and "U.S. Army policies," it is nonetheless clear from the face of the Complaint that: (1) the substance of the allegations and the claims are unchanged; and (2) the alleged acts and omissions giving rise to Plaintiff's claims occurred pursuant to the Security Contract and under the immediate direction of the United States.  *See* Compl. ¶¶ 14–17.

## IV.     REMOVAL IS PROPER UNDER 28 U.S.C. § 1442(a)(1)

21.     The federal officer removal statute, 28 U.S.C. § 1442(a)(1), confers on this Court mandatory jurisdiction over claims brought against federal officers and "any person acting under that officer."  28 U.S.C. § 1442(a)(1).  "The purpose of the statute is to prevent an 'unfriendly' state from imposing state law liability on federal officers and their agents for actions performed

'under the immediate direction of the national government.'" *Totten v. Crane Co.*, No. 13 C 8157, 2014 WL 1689689, at *2 (N.D. Ill. Apr. 28, 2014) (quoting *Tennessee v. Davis*, 100 U.S. 257, 263 (1879). "Simply put, the removal statute allows a federal officer or contractor to litigate a federal defense in a federal forum." *Id.*; *see also Harris*, 532 F. Supp. 2d at 1004 ("The basic purpose of § 1442(a)(1) is to ensure a federal forum for defenses of official immunity by federal officers.").

22.     "Unlike the general removal statute, the federal officer removal statute is to be 'broadly construed' in favor of a federal forum." *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Philadelphia*, 790 F.3d 457, 467 (3d Cir. 2015), *as amended* (June 16, 2015). As the United States Supreme Court has explained:

> The federal officer removal statute is not 'narrow' or 'limited.' . . . One of the primary purposes of the removal statute—as its history clearly demonstrates—was to have [federal] defenses litigated in the federal courts. . . . The officer need not win his case before he can have it removed. In cases like this one, Congress has decided that federal officers, and indeed the Federal Government itself, require the protection of a federal forum. This policy should not be frustrated by a narrow, grudging interpretation of [Section] 1442(a)(1).

*Willingham v. Morgan*, 395 U.S. 402, 406–07 (1969).

23.     Removal is proper in this case under the federal officer removal statute because (1) Triple Canopy is a person under the statute; (2) Triple Canopy was acting under the direction of a federal officer when it engaged in the allegedly tortious conduct, meaning that there is a causal connection between Plaintiff's claims and Triple Canopy's actions under federal direction; and (3) Triple Canopy has a colorable defense based on federal law. 28 U.S.C. § 1442(a)(1); *Harris*, 532 F. Supp. 2d at 1003.

### A.     Triple Canopy is a "person"

24.     Triple Canopy satisfies the first requirement of § 1442(a)(1) because corporations qualify as a "person" under the statute. *Goncalves By & Through Goncalves v. Rady Children's*

7

*Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017) (collecting cases and stating that "[t]he courts of appeals have uniformly held that corporations are 'persons' under § 1442(a)(1)"); *Ruppel*, 701 F.3d at 1181 (holding that corporations are persons under Section 1442(a)).

**B.     Triple Canopy was "acting under" a federal officer**

25.     Triple Canopy satisfies the second requirement of Section 1442(a)(1) because the events giving rise to Plaintiff's claims occurred while Triple Canopy was "acting under" a federal officer, meaning that there is a causal connection between Plaintiff's claims and Triple Canopy's alleged actions under federal direction.  *See Harris*, 532 F. Supp. 2d at 1003; *see also Ruppel*, 701 F.3d at 1181 (stating that the term "acting under" is liberally construed).

26.     When a corporation is involved, the Supreme Court has interpreted the phrase "acting under" to contemplate a relationship where the government exerts some "subjection, guidance, or control," and where the corporation engages in an effort "to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Watson v. Philip Morris Cos.*, 552 U.S. 142, 152 (2007) (emphases in original).  In holding that mere government regulation of corporate entities cannot justify removal under the statute, the Court emphasized the distinction between mere regulation and situations, like this one, where a contractor "perform[s] a job that, in the absence of [the contract], the Government itself would have had to perform." *Watson*, 552 U.S. at 153–54;

27.     In *Ruppel v. CBS Corporation*, 701 F.3d 1176 (7th Cir. 201), the Seventh Circuit observed that the term "acting under" is to be "liberally construe[d]" and held that it "covers situations . . . where the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to achieve." *Id.* at 1181.  The *Ruppel* Court further stated that "the causal connection between the charged conduct and asserted official authority" is established by showing that the contractor's relationship with the plaintiff "derived solely from its official

8

duties." *Id.* (quoting *Willingham*, 395 U.S. at 409) (alteration omitted); *see also Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137–38 (2d. Cir. 2008) ("To show causation, Defendants must only establish that the act that is the subject of Plaintiffs' attack . . . occurred *while* Defendants were performing their official duties." (emphasis in original)).

28.     Here, Triple Canopy was "acting under" the direction of federal officers when it allegedly engaged in the actions and omissions that gave rise to Plaintiff's claims—*i.e.*, when it hired and trained Defendant Barrett.  Indeed, at the heart of the Complaint is Plaintiff's allegation that Triple Canopy failed to fulfill its contractual obligation to provide its employees at Bagram Airfield "the necessary and proper weapons training, instructions and/or guidance to its employees . . . and as a result said individuals . . . were inadequately and/or inappropriately trained in firearm use and gun safety."  Compl. ¶ 18.[2]

29.     In fact, upon Triple Canopy's assumption of its contractual duties under the Security Contract, the United States remained (and remains) in complete and direct operational control of Triple Canopy's actions and personnel.  This is referred to in the military as "OPCON," which is short-hand for "operational control."  Triple Canopy's role was (and is) administrative in nature.  Even Triple Canopy's "Standard Operating Procedures" under the Contract are subject to review and approval by the United States. **Exhibit B**, Declaration of Aaron Edwards ("Edwards Decl."), at ¶ 9.

30.     As part of its operational control, the United States Army directs all aspects of Triple Canopy's hiring and training of the security guards who provide security services under the Contract, including Defendant Barrett.  Edwards Decl. at ¶ 10.  In addition, Triple Canopy

---

[2] *See also* **Exhibit C** ¶ 22 (stating that "the Security Contract . . . required all of [Triple Canopy's] employees . . . to be familiar with and abide by all U.S. Army policies, procedures, regulations and/or guidelines relating to the carriage, use, and safety of firearm (side arm) or weapons usage . . . .").

personnel performing security duties at Bagram Airfield work under the direct supervision of the U.S. Army—specifically, the U.S. Army's Guard Force. *Id.* ¶ 11.

31.     At all times relevant to this action, Triple Canopy personnel were fully integrated with active duty personnel at Bagram Airfield and were subject to and expected to abide by all U.S. Army rules, regulations, restrictions, and deployment manuals. The U.S. Army controlled staffing, meaning that it could order Triple Canopy to provide more personnel as part of a surge capacity, or it could order that Triple Canopy personnel be removed from Bagram Airfield at any time and for any reason. *Id.* ¶¶ 8, 12–13.

32.     At all times relevant to the matters alleged in this action, the Security Contract required Triple Canopy to provide, among other things, armed guard duty in the Base Defense Operations Center ("BDOC") at Bagram Airfield. The BDOC is the operational "hub" of the U.S. Army Guard Force; in other words, it is the "command and control" facility for base security and defense. It plans and coordinates all Bagram Airfield defense efforts, and can deploy a quick reaction force to engage security threats that arise—including enemy threats. The BDOC is supervised by an active duty military member—typically a Sergeant of the Guard Force. *Id.* ¶ 15.

33.     At all times relevant to this matters alleged in this action, Triple Canopy did not have a supervisor permanently stationed at BDOC. As such, Triple Canopy personnel working in the BDOC—including Defendant Barrett—were subject to the direction and control of the active duty military supervisor stationed in the BDOC. *Id.* ¶ 16.

34.     In short, Triple Canopy denies that it was negligent in hiring, training, or supervising Defendant Barrett in part because the United States exerted complete control over Triple Canopy's hiring, training, and supervision of security officers at Bagram Airfield, including Defendant Barrett, under the terms and conditions of the Security Contract. Compl. ¶¶ 14–15, 17.

35.     Moreover, Triple Canopy's relationship with Plaintiff "derived solely from its official duties." *Ruppel*, 701 F.3d at 1181 (alteration omitted).  In fact, Triple Canopy and Plaintiff have no relationship at all but for Triple Canopy's provision of security services at Bagram Airfield.

## C.     Triple Canopy has a colorable federal defense

36.     In construing the colorable federal defense requirement, the Supreme Court has rejected a "narrow, grudging interpretation" of the statute, recognizing that "one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court." *Jefferson County v. Acker,* 527 U.S. 423, 431 (1999) (quoting *Willingham,* 395 U.S. at 407).  Thus, at this stage in the proceedings, Triple Canopy need not show that its federal defenses will prevail, but only that the defenses are "colorable."  *Willingham*, 395 U.S. at 407 ("The [federal] officer need not win his case before he can have it removed"); *Ruppel*, 701 F.3d at 1182 ("The validity of the defense will present 'complex issues, but the propriety of removal does not depend on the answers.'  Instead, the claimed defense need only be 'plausible.'" (quoting *Venezia v. Robinson*, 16 F.3d 209, 212 (7th Cir. 1994)).

37.     Triple Canopy has numerous federal defenses, including but not limited to federal preemption of state law under the combatant activities exception to the Federal Tort Claims Act ("FTCA"), federal preemption of state law under the discretionary function exception to the FTCA, the political question doctrine, and various doctrines of official and derivative sovereign immunity.

38.     *First*, Triple Canopy intends to assert that the circumstances of this lawsuit give rise to federal preemption of state law under the combatant activities exception to the FTCA.  *See Saleh v. Titan Corp.,* 580 F.3d 1, 7 (D.C. Cir. 2009).  The FTCA preempts common law tort claims

against government contractors when the claims are "arising out of the combatant activities of the military or naval forces . . . during a time of war. *See* 28 U.S.C. § 2680(j); *Saleh*, 580 F.3d at 7.

39. "[T]he policy embodied by the combatant activities exception is simply the elimination of tort from the battlefield, both to preempt state or foreign regulation of federal wartime conduct and to free military commanders from the doubts and uncertainty inherent in potential subjection to civil suit." *Saleh*, 580 F.3d at 7. Simply put, "traditional rationales for tort law—deterrence of risk-taking behavior, compensation of victims, and punishment of tortfeasors—are singularly out of place in combat situations, where risk-taking is the rule." *Id.*

40. Because the federal interests inherent in the combatant activities exception are "equally implicated whether the alleged tortfeasor is a soldier or a contractor engaging in combatant activities at the behest of the military and under the military's control," *id.*, multiple circuit courts have held these federal interests conflict with, and consequently preempt, tort suits against government contractors. *See, e.g., In re KBR, Inc.*, 893 F.3d 241, 264 (4th Cir. 2018); *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 347–48 (4th Cir. 2014); *Harris v. Kellogg Brown & Root Servs., Inc.*, 724 F.3d 458, 480 (3d Cir. 2013); *Saleh*, 580 F.3d at 7; *Koohi v. United States,* 976 F.2d 1328, 1336 (9th Cir. 1992).

41. In *Saleh*, for example, the D.C. Circuit Court of Appeals applied the combatant activities exception to dismiss all tort law claims against private contractors that were providing interrogation and translation services to the U.S. military at the Abu Ghraib prison in Iraq. 580 F.3d 1. The D.C. Circuit articulated the following bright-line rule: "During wartime, where a private a service contractor is integrated into combatant activities over which the military retains command authority, a tort claim arising out of the contractor's engagement in such activities shall be preempted." *Saleh*, 580 F.3d at 9. The Court stated that the military need not maintain

"exclusive operational control" over the contractor for the government to have an interest in immunizing a military operation from suit; rather, it is permissible for the contractor to exert "*some* limited influence over an operation" as long as the military "retain[ed] command authority." *Id.* at 8–9 (emphasis in original).

42.    In the case at bar, Plaintiff's claims clearly arise "out of the combatant activities of the military . . . during a time of war." *See* 28 U.S.C. § 2680(j). While the FTCA does not define "combatant activities," courts have established that it "includes not only physical violence, but activities both necessary to and in direct connection with actual hostilities." *Johnson v. United States*, 170 F.2d 767, 770 (9th Cir. 1948); *In re KBR*, 744 F.3d at 351 (adopting the *Johnson* court's test). Indeed, the provision of services much less "combatant" than the armed security services at issue in this lawsuit have qualified as "combatant activities" as long as they were done in a combat zone. *See, e.g.*, *In re KBR*, 744 F.3d at 351 (waste management and water treatment); *Harris*, 724 F.3d at 481 (maintaining electrical systems); *Aiello v. Kellogg, Brown & Root Servs., Inc.*, 751 F.Supp.2d 698, 711–12 (S.D.N.Y. 2011) (latrine maintenance). If water treatment, electrical maintenance, and latrine maintenance are combatant activities, the provision of armed security for military facilities and military personnel at Bagram Airfield is undoubtedly a combatant activity.

43.    In addition, the military retained command authority over Triple Canopy's provision of security services at Bagram Airfield. As the Complaint makes clear, Triple Canopy's work at Bagram Airfield was done pursuant to the terms, conditions, and specifications of the Bagram Airfield Security Contract. Compl. ¶¶ 14–17. Plaintiff now seeks to impose state tort liability on Triple Canopy for the very services (i.e., hiring, training, and supervising security officers) that it was performing under the direction and oversight of the United States. Thus, the combatant activities exception to the FTCA is a colorable federal defense.

44.    *Second,* Triple Canopy intends to assert that Plaintiff's claims are preempted by the discretionary functions exception to the FTCA.  *See Boyle v. United Technologies Corp.*, 487 U.S. 500, 511 (1988).  The FTCA preempts common law tort claims against government contractors when the claims are "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  *See* 28 U.S.C. § 2680(j); *Boyle*, 487 U.S. at 511.

45.    Under this defense, government contractors are not liable to a third party in tort if the government approved reasonably precise specifications and procedures, the contractor conformed to those specifications and procedures, and the contractor warned the government of risks of which the government was unaware.  *Id.*; *see also Getz v. Boeing Co.*, 654 F.3d 852, 866 (9th Cir. 2011) ("*Boyle* does not require government contractors to warn of dangers that were already known to the United States.").

46.    The defense is implicated in this case because Triple Canopy's security services were performed pursuant to precise specifications and procedures, Triple Canopy's activities conformed to these specifications and procedures, and the United States had equal or superior knowledge of the risks associated with securing Bagram Airfield.  Thus, the discretionary functions exception to the FTCA is a colorable federal defense.

47.    *Third*, Triple Canopy intends to assert that the political question doctrine bars Plaintiff's claims.  The political question doctrine is "a function of the separation of powers," *Baker v. Carr,* 369 U.S. 186, 210 (1962), and it "excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally

committed for resolution to the halls of Congress or the confines of the Executive Branch." *Japan Whaling Assoc. v. American Cetacean Society,* 478 U.S. 221, 230 (1986).

48.     "[A] soldier injured at the hands of a contractor which is performing military functions subject to the military's orders and regulations . . . raise[] . . . political questions." *Whitaker v. Kellogg Brown & Root, Inc.*, 444 F. Supp. 2d 1277, 1279–81 (M.D. Ga. 2006).

49.     Moreover, "[i]t is well settled that questions concerning military training have traditionally been insulated from judicial review." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1293 (11th Cir. 2009), *cert. denied*, 130 S. Ct. 3499 (2010); *see also Gilligan v. Morgan*, 413 U.S. 1, 10 (1973) ("The complex subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments, subject always to civilian control of the Legislative and Executive Branches.").

50.     In *Carmichael*, the wife of a U.S. soldier sued military contractors under various negligence theories (including respondeat superior and negligent hiring/training) after their employee lost control of a truck traveling in a military convoy in Iraq, causing severe injury to her husband.   572 F.3d at 1275–78.   The district court dismissed the claims on political question grounds because (1) they would require reexamination of sensitive judgments and decisions entrusted to the military in a combat zone, and (2) there were no judicially discoverable and manageable standards for resolving the claims.   *Id.* at 1279; *see Baker v. Carr*, 369 U.S. at 217. The Eleventh Circuit affirmed the district court on both independently adequate grounds.   *Id.* at 1288, 1292.

51.     In holding that the negligence claims were non-justiciable because they would require reexamination of military judgments, the Eleventh Circuit reasoned that "[a]t the broadest level, these [judgments] include the military's decision to utilize civilian contractors in conducting

the war in Iraq, and its decision to use the contractors specifically in connection with fuel-transportation missions . . . . The rollover in which Sergeant Carmichael was injured never would have taken place if these basic decisions had not been made." *Id.* at 1281.

52.     In holding that the negligence claims were non-justiciable because the court lacked judicially discoverable and manageable standards for resolving the issues in the case, the Court reasoned that "the standards used in ordinary tort cases," in which "judges and juries are able to draw upon common sense and everyday experience in deciding whether the driver of a vehicle has acted reasonably," are wholly inapplicable to the conduct of a driver who is dealing with the exigencies of a combat zone. *Id.* at 1288–89; *see also Aktepe v. United States,* 105 F.3d 1400, 1404 (11th Cir. 1997) (holding that court "lack standards with which to assess whether reasonable care was taken to achieve military objectives while minimizing injury and loss of life").

53.     The Eleventh Circuit separately addressed the justiciability of the plaintiff's claim for negligent training. *Id.* at 1293.  The Court held that, even if the military never directly provided any of the contractor-employee training, "[the] negligent training claim could [not] be litigated without subjecting military judgments and policies to the kind of scrutiny prohibited by the political question doctrine" because the contract at issue required contractor-employees to be trained in accordance with military standards, the instructors who trained employees were themselves trained by military personnel, and the materials used in the training were taken directly from the military training manuals.  *Carmichael*, 572 F.3d at 1293–94.  The Court further concluded that it did not have "readily available standards for assessing whether the training [the driver] received was adequate to prepare him for the work he was to perform." *Id.*[3]

---

[3] The Court reached the same conclusions regarding Plaintiff's negligent supervision claim.  *Id.* at 1294 ("The issues of training and supervision are so closely related to that we need do little more than reiterate the considerations made [in the negligent training analysis].")

54. Plaintiff's claims in this lawsuit are barred by the political question doctrine for the same reasons that the plaintiff's claims in *Carmichael* were barred. Adjudication of these claims would require the Court to reexamine sensitive judgments and decisions entrusted to the military in a combat zone, including the decision to use a military contractor to provide security services that would have otherwise been provided by members of the military, as well as judgments and decisions around the standards and regulations imposed on the contractor in hiring, training, and supervising the employees who provided the security services. *See Carmichael*, 572 F.3d at 1281. In addition, no judicially discoverable and manageable standards exist for these claims. Even if the Court finds that Illinois or some other state tort law applies to claims brought by an active service-member against a military contractor for acts and omissions that occurred on a military base in Afghanistan, *see infra* paragraph 56, it cannot engage in a standard negligence analysis without asking and answering questions that are insulated from judicial review by the political question doctrine. Among other things, the Court would be required to examine what, if any, duty of care is owed to active service members on a military base in a combat zone and whether Triple Canopy acted reasonably in the context of protecting military facilities and personnel from a multitude of threats in a combat zone. *See id.* at 1288–89; *Aktepe*, 105 F.3d at 1404. For these and other reasons, the political question doctrine is a colorable federal defense to Plaintiff's claims.

55. *Fourth*, Triple Canopy intends to assert multiple doctrines of official and derivative sovereign immunity. Triple Canopy possesses "official" immunity for alleged discretionary conduct that was within the scope of its authority under the terms of their contractual obligations with the United States. *See, e.g., Westfall v. Erwin,* 484 U.S. 292 (1988); *Mangold v. Analytic Servs., Inc.*, 11 F.3d 1442 (4th Cir. 1996); *Murray v. Northrop Grumman Info. Tech., Inc.,* 444 F.3d 169 (2d Cir. 2006).

56. Moreover, as agents of the government, Triple Canopy is protected from Plaintiff's claims by "derivative" sovereign immunity. *See, e.g., Yearsley v. W.A. Ross Constr. Co.,* 309 U.S. 18, 22 (1940) (the action of an authorized government agent is the act of the government); *Butters v. Vance Int'l*, 225 F.3d 462, 466 (4th Cir. 2000) ("[It is] well-settled law that contractors and common law agents acting within the scope of their employment for the United States have derivative sovereign immunity."); *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 206–07 (5th Cir. 2009) (finding that the district court correctly dismissed claims against a contractor when the plaintiff did not alleged that the contractor exceeded his authority or that Congress did not validly confer such authority); *Myers v. United States*, 323 F.2d 580, 583 (9th Cir. 1963) (applying *Yearsley* and conclusion that contractor was not liable for work it performed pursuant to a federal contract). Whether these doctrines of official and derivative immunity apply to Triple Canopy under these circumstances are questions to be entertained in a federal forum. *Howard v. Lyons,* 360 U.S. 593, 597 (1959) (the validity of a claim of immunity to state tort actions "must be judged by federal standards, to be formulated by the courts in the absence of legislative action by Congress").

57. For all of the above stated reasons, removal of this matter is proper under 28 U.S.C. § 1442(a)(1).

## V. REMOVAL IS PROPER UNDER 28 U.S.C. §§ 1331 and 1441(a)

58. Removal of this matter is also proper under the Court's federal question jurisdiction because Plaintiff's claims are completely preempted by federal law, and even if they are not completely preempted, adjudication of the claims will require this Court to resolve substantial disputed questions of federal law. *See Boyle*, 487 U.S. 500; *Saleh*, 580 F.3d 7; *Grable v. Sons*

*Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005); *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 847, 850 (1985).

59. *First*, for the reasons stated *supra*, paragraphs 30–52, Plaintiff's claims implicate uniquely federal interests and are completely preempted by the combatant activities and discretionary function exceptions to the FTCA. *Boyle*, 487 U.S. 500; *Saleh*, 580 F.3d 7.

60. *Second*, even if the claims are not completely preempted by the FTCA, adjudication of the claims will require this Court to resolve substantial disputed questions of federal law. *See Grable*, 545 U.S. at 312 ("[F]ederal question jurisdiction will lie over state-law claims that implicate significant federal issues. Th[is] doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial issues of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues.").

61. As an initial matter, the resolution of Plaintiff's claims will depend on the resolution of substantial predicate questions of federal law, including whether jurisdiction and venue lie in the United States, whether the claims are preempted by the FTCA, whether they are justiciable under the political question doctrine, and whether Triple Canopy is entitled to official or derivative sovereign immunity. *See supra* paragraphs 24–40.

62. If the Court permits Plaintiff's claims to proceed, it will then be required to determine what law applies to a claim brought by an active service-member against a military contractor for acts and omissions that occurred on a military base in Afghanistan in the middle of a combat zone—a question that undoubtedly implicates federal law. This analysis will necessitate review and interpretation of multiple agreements between the United States government and Afghanistan regarding the laws that apply to U.S. military contractors while they are serving in

Afghanistan. And, even under Illinois choice of law principles, where "the place of injury controls unless Illinois has a more significant relationship with the occurrence and with the parties," *Fredrick v. Simmons Airlines, Inc.*, 144 F.3d 500, 503-04 (7th Cir. 1998), it is not unlikely that the substantive law that applies to Plaintiff's claims is that of Afghanistan.

63.    Finally, if Plaintiff's claims are analyzed under the traditional negligence framework—*i.e.*, duty, breach, proximate causation, and injury—that analysis necessitates significant entanglement with federal law and federal interests. Among other things, this Court would need to determine what legal duty Triple Canopy (as a military contractor acting under the direction and control of the United States) owed Plaintiff (as an active service-member) on a military base in a combat zone. And given that Defendant Barrett's training at Bagram Airfield was "so deeply bound up with military regulations," Plaintiff's negligent training claim would undoubtedly "entail judicial scrutiny of sensitive judgments customarily entrusted to the military." *Carmichael*, 572 F.3d at 1293–94.

## VI.    CONCLUSION

64.    In accordance with 28 U.S.C. § 1446(d), Defendants have given contemporaneous written notice of this Notice of Removal to all adverse parties and the clerk for the Circuit Court of Cook County, Illinois. *See* **Exhibit E** (Notice of Notice of Removal).

65.    If any questions arise as to the propriety of the removal of this action, Defendants respectfully request the opportunity to present a brief and oral argument in support of its position that the case is removable.

66.    By filing this Notice of Removal, Defendants do not waive any defenses that may be available to them, and does not concede that the allegations in the Complaint state a valid claim under any applicable law.

20

WHEREFORE, Defendants respectfully request that this action be removed from the Circuit Court of Cook County, Illinois, to the United States District Court for the Northern District of Illinois, Eastern Division, and that this Court assume jurisdiction over this action.

Respectfully submitted,

By: /s/ Dawn C. Stetter
Dawn C. Stetter
MCGUIREWOODS LLP
77 W. Wacker Dr., Suite 4100
Chicago, IL 60601
Tel: (312) 849-8100
Fax: (312) 849-3690
dstetter@mcguirewoods.com

Stephen W. Robinson (D.C. Bar # 282731)*
MCGUIREWOODS LLP
1750 Tysons Blvd., Suite 1800
Tysons, VA 22101
Tel: (703) 712-5469
Fax: (703) 712-5258
srobinson@mcguirewoods.com

Christopher M. Michalik (Virginia Bar # 47817)*
Elizabeth P. Redpath (Georgia Bar # 979358)*
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-4343
Fax: (804) 225-5411
cmichalik@mcguirewoods.com
eredpath@mcguirewoods.com

**ATTORNEYS FOR DEFENDANTS
TRIPLE CANOPY, INC.; CONSTELLIS, LLC;
CONSTELLIS HOLDINGS, LLC; CONSTELLIS,
INC.; CONSTELLIS GROUP, INC.**

*Applications for Admission *Pro Hac Vice* to be made

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 13, 2018, the foregoing document was duly served in accordance with the provisions of Rule 5 of the Federal Rules of Civil Procedure as follows:

***U.S. Mail & Electronic Mail***
Timothy S. Tomasik
Tomasik Kotin Kasserman LLC
161 N. Clark Street, Suite 3050
Chicago, IL 60601
tim@tkklaw.com

***U.S. Mail & Electronic Mail***
Patrick J. Giese
Tomasik Kotin Kasserman LLC
161 N. Clark Street, Suite 3050
Chicago, IL 60601
pat@tkklaw.com

***U.S. Mail & Electronic Mail***
Patrick M. Grim
Tomasik Kotin Kasserman LLC
161 N. Clark Street, Suite 3050
Chicago, IL 60601
pgrim@tkklaw.com

/s/ Dawn C. Stetter
Dawn C. Stetter